IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ANTHONY IGWE and ERINMA IGWE,    }
    }
    *Plaintiffs*,        }
    }
v.                  }        CIVIL ACTION NO. H-05-1423
    }
NORTHWEST AIRLINES, INC.  and    }
KLM ROYAL DUTCH AIRLINES,     }
    }
    *Defendants*.      }

## ORDER GRANTING DEFENDANT KLM'S MOTION FOR SUMMARY JUDGMENT

Pending before the court is Defendant KLM Royal Dutch Airlines's ("KLM's")

motion for summary judgment (Doc.  27).  As of this date, Plaintiffs Anthony Igwe and Erinma

Igwe (collectively "Igwes") have not yet filed a response to Defendant's motion.  For the reasons

outlined below, the court ORDERS that KLM's motion for summary judgment (Doc.  27) is

GRANTED.

I.        Facts[1]

On Friday, March 26, 2004, Mr.  Igwe and his then four-year-old daughter, Erinma,

were scheduled to leave on a 4:00 p.m. flight from Houston to Nigeria, with a stop-over in

Amsterdam.  The Igwes claim they arrived at Bush Intercontinental Airport at approximately 1:50

p.m.[2]  After arriving, the Igwes made their way to the check-in point, where Ms. Elysia Brown

("Brown"), the KLM Swiss Port check-in and gate agent on this particular day, helped the Igwes

with their initial processing.  The Igwes were traveling with seven medium-sized pieces of

luggage, several containing gifts for family in Nigeria.  Brown explained that passengers were

---

[1]  Because Plaintiffs have failed to file a response to KLM's motion for summary judgment, the court
may accept as undisputed the facts set forth in support of the unopposed motion for summary judgment. *Lewis v.
Continental Airlines, Inc.*, 80 F. Supp. 2d 686, 694 (S.D. Tex. 1999); *Taylor v. Dallas County Hosp. Dist.*, 959 F. Supp.
373, 376 (N.D. Tex. 1996).

[2]  *See* Deposition of Anthony Igwe ("Igwe Dep."), March 22, 2006, at  47:21-48:9 (Doc.  30).

allowed only two pieces of luggage a piece, and therefore the Igwes would have to pay a fee for the three additional pieces of luggage.

The  processing of the Igwes' excess baggage took at least until 3:00 p.m. or 3:15 p.m. to complete.[3]  It is during this period of time that the computer automatically transfers over to a "waiting list."[4]  Those on the waiting list are issued a "passenger verification card," not a boarding pass.  This card allows the passenger to get through the security checkpoint, but does not guarantee an actual seat on the plane.  Brown issued the Igwes their passenger verification cards and urged the Igwes to get through security and up "to the counter" as quickly as they could in order to insure seats would be available.[5]   Brown testified that she made it abundantly clear that a passenger verification card was not a boarding pass and that the Igwes' seats were no longer guaranteed.[6]

The Igwes made it through security without any problems and eventually presented themselves at the departing gate.  Without going to the check-in counter at the gate,[7] the Igwes then tried to board the plane but were stopped by Mr. Daniel DeSimone ("DeSimone"), the KLM Swiss Port station manager on this particular day.  DeSimone had tried paging the Igwes several times, but having not heard from them, he canceled their seats and continued assigning seats to other passengers on the wait list.[8]  When the Igwes arrived at the gate, there was only one seat left on the plane.

---

[3]  Deposition of Elysia Brown ("Brown Dep."), September 8, 2006, at 17:25 - 18:18 (Doc.  30).

[4]  *Id.*

[5]  *Id.* at 23:9 - 24:24.

[6]  *Id.* at 17:3 - 23:19.

[7]  Igwe Dep.  at 74:17 - 74:25.

[8]  Deposition of Daniel DeSimone ("DeSimone Dep."), March 22, 2006, at 18:15-21; 21:14-22; 31:17-24 (Doc.  30).

Case 4:05-cv-01423   Document 33   Filed in TXSD on 01/04/07   Page 3 of 9

Mr. Igwe was irate. He refused DeSimone's offer of two $500 credit vouchers and a transfer of his current tickets to a flight with British Airways to Nigeria leaving Houston the following day.[9] He purchased two tickets, out-of-pocket, with British Airways for a flight leaving on Sunday.

After they were denied boarding, the Igwes brought suit against Northwest Airlines, Inc. ("NW Airlines") and KLM in state court alleging (1) breach of contract, (2) violations of the Texas Deceptive Trade Practices Act ("DTPA"), and (3) negligence, including negligence per se and "interference with prospective business relations." *See* Plaintiffs' Original Petition at ¶¶ 4-6 (Doc. 27, Ex. A). Defendants removed the case to this court based on diversity and potential federal question jurisdiction. Defendants' Notice of Removal (Doc. 1). Subsequently, NW Airlines filed for bankruptcy, and this court issued an automatic stay. Order of Automatic Stay Due to Bankruptcy (Doc. 11). Defendant KLM has now moved for summary judgment arguing, among other things, that all of the Igwe's claims are preempted and not recognized by the Montreal Convention.

III.        Law

A.        Legal Standard for Summary Judgment

A party moving for summary judgment must inform the court of the motion's basis and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[9] *Id.* at 29:15 - 32:25; Brown Dep. at 29:6 - 31:22. At this point, Mr. Igwe refused to talk to Mr. DeSimone directly. It was Ms. Brown who had the unhappy task of acting as the go-between for Mr. Igwe's discussions with Mr. DeSimone.

- 3 -

Once the movant makes this showing, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial.  *Celotex*, 477 U.S. at 323-24.   The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), *citing U.S. v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).  Instead, the non-moving party must produce evidence upon which a jury could reasonably base a verdict in its favor.  *Anderson*, 477 U.S. at 248.   The non-movant must "go beyond the pleadings and by [its] own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." *Webb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir. 1998). Unsubstantiated and subjective beliefs and conclusory allegations and opinions are not competent summary judgment evidence.  *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139-40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert. denied*, 506 U.S. 825 (1992).  Nor are pleadings summary judgment evidence.  *Wallace v. Texas Tech University*, 80 F.3d 1042, 1046 (5th Cir. 1996), *citing Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(*en banc*). The non-movant cannot discharge its burden by offering vague allegations and legal conclusions.  *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990).  Nor is the district court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment.  *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998), *citing Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992).

All reasonable inferences must be drawn in favor of the non-moving party. *Matsushita*, 475 U.S. at 587-88.  In reviewing evidence favorable to the party opposing a motion for summary judgment, a court should be more lenient in allowing evidence that is admissible,

though it may not be in admissible form.  *See Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.,* 831 F.2d 77, 80 (5th Cir. 1988).  Furthermore, the party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party.  *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198-200 (5th Cir. 1988).  The non-moving party may also identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue.  *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990).  A non-moving party's failure to respond does not automatically entitle the movant to a "default" summary judgment.  *Lewis*, 80 F. Supp. 2d at 694; *Taylor*, 959 F. Supp.  at 376.  If the moving party does not discharge its initial burden of pointing out appropriate evidence demonstrating that no questions of fact remain, the nonmovant is not obligated to respond.  *Taylor*, 959 F.  Supp.  at 376 (citing *John v. State of Louisiana (Board of Trustees for State Colleges and Universities)*, 757 F.2d 698, 707-8 (5th Cir. 1985)).

B.      Preemption under the Montreal Convention

Beginning in November of 2003, the Montreal Convention[10] succeeded the Warsaw Convention[11] as the treaty governing international air carrier liability.  *Paradis v. Ghana Airways Ltd.*, 348 F. Supp. 2d 106, 110 n. 4-5 (S.D.N.Y. 2004).  The Montreal Convention is "an entirely new treaty that unifies and replaces the system of liability that derives from the Warsaw Convention." *Ehrlich v. Am. Airlines, Inc.*, 360 F.3d 366, 371 n.4 (2d Cir. 2004) (explaining that the drafters' primary goal was to "harmonize the hodgepodge of supplementary amendments and intercarrier agreements" that made up the Warsaw Convention).  However, courts construing the

---

[10]   Convention for Unification of Certain Rules for International Carriage by Air, Done at Montreal on 28 May 1999, reprinted in S. Treaty Doc. No 106-45, 1999 W.L. 33292734 (2000) (entered into force Nov.  4, 2003) ("Montreal Convention").

[11]   Convention for Unification of Certain Rules Relating to International Transportation by Air, Oct. 29, 1934,  49 Stat. 3000, T.S. No. 876 (reprinted at note following 49 U.S.C § 40105 (1997)) ("Warsaw Convention").

Montreal Convention have concluded that it has "substantially the same preemptive effect" as the Warsaw Convention. *Paradis*, 348 F. Supp. 2d at 111. Unless noted otherwise, the court therefore assumes that the case law interpreting the Warsaw Convention, as amended by Montreal Protocol No. 4,[12] has equal applicability to the interpretation of the Montreal Convention for purposes of preemption.

IV.        Analysis

Preemption in this case  is governed by Article 29 of the Montreal Convention, which provides in relevant part:

> In the carriage of passengers, baggage and cargo, *any action* for damages, however founded, whether under this Convention *or in contract or in tort or otherwise*, can only be brought subject to the conditions and such limits of liability as are set out in this Convention....

Montreal Convention, 1999 WL at *50 (emphasis added). Although the Igwes proceed under a number of legal theories, the Montreal Convention provides their exclusive remedy to the extent to which their claims fall within the Convention's scope. *See El Al Israel Airlines, Ltd.  v.  Tseng*, 525 U.S. 155, 160-61 (1999).

The Igwes' state tort and contract claims all flow directly from their alleged "bumping"[13] from the KLM flight. The only provision of the Montreal Convention that may speak to the Igwes' claims is the "delay" provision in Article 19, which provides:

> The carrier is liable for damage occasioned by delay in the carriage by air of passengers, baggage or cargo.  Nevertheless, the carrier shall not be liable for damage occasioned by delay if it proves that

---

[12] Montreal Protocol No. 4 to Amend the Convention for the Unification of Certain Rules Relating to International Carriage By Air, signed at Warsaw on October 12, 1929, as amended by the Protocol Done at the Hague on September 8, 1955 ("Montreal Protocol No. 4"), *reprinted in* S. Exec. Rep. No. 105-20, pp. 21-32 (1998).

[13] "Bumping" is an airline industry practice whereby passengers are denied seats due to intentional overselling, which is intended to minimize the number of empty seats due to cancellations. *Nader v.  Allegheny*, 426 U.S. 290, 292 (1976); *see also* Elliot Blanchard, *Terminal 250: Federal Regulation of Airline Overbooking*, 79 N.Y.U. L. Rev. 1799 (2004) (discussing economic incentives encouraging this industry practice). The court assumes that the Igwes would classify as "bumped" passengers for purposes of the foregoing argument.

> it and its servants and agents took all measures that could reasonably be required to avoid the damage or that it was impossible for it or them to take such measures.

Montreal Convention, 1999 WL at *46.  Thus, the critical issue is whether Article 19 of the Montreal Convention encompasses "bumping" as alleged in the facts of this case.

Some courts classify bumping as a "delay" covered under the Montreal Convention. *Paradis*, 348 F. Supp. 2d at 113-14.  Other courts classify bumping as "contractual non-performance" that is not preempted by the Montreal Convention. *Weiss v. El Al Israel Airlines, Ltd.*, 433 F. Supp. 2d 361 (S.D.N.Y. 2006); *Wolgel v. Mexicana Airlines*, 821 F.2d 442 (7th Cir. 1987).  There is no Fifth Circuit authority directly on point.  However, a closer examination of the authorities addressing this issue reveals that a pivotal factor is whether the airline provided a reasonable alternative to the "bumped" passengers.  In *Paradis*, the court distinguished *Wolgel* on three grounds: First, the court noted that the Supreme Court's message in *Tseng* "that the application of the Convention is not to be accomplished by a miserly parsing of its language" called into doubt *Wolgel*'s distinction between "bumping" and "delay."  *Paradis*, 348 F. Supp. 2d at 113 (quoting *King v. Am. Airlines*, 146 F. Supp. 2d 159, 162 (N.D.N.Y. 2001)).  Second, the passengers in *Wolgel* were bumped on their outbound flight, while the passenger in *Paradis* was on the return leg when the cancellation occurred.  *Id*. at 113-14.  Finally, and most importantly for the purposes of this case, the *Paradis* court emphasized that the passengers in *Wolgel* had received no alternative transportation or compensation, whereas the *Paradis* passenger had acted too hastily in repudiating his ticket to claim complete non-performance by the airline. *Id*.; *C.f. Sassouni v. Olympic Airlines*, 769 F. Supp. 537 (S.D.N.Y. 1991) (holding that bumping constituted delay where airline provided substitute transportation for plaintiff).

This type of repudiation is exactly what the undisputed facts show in the case at bar. Not only did the Igwes fail to present themselves on time to claim and receive their assigned seats but they also refused KLM's offer of alternative transportation on British Airways and the two

$500 credit vouchers.  The Igwes acted too hastily in rejecting KLM's conciliatory offers to be able to claim complete non-performance by the airline.[14]  Even those courts finding that the Montreal Convention does not preempt bumping claims acknowledge that this *Paradis* distinction is important.  *See Weiss*, 433 F.  Supp.  2d at 367 ("The distinction between proper and improper repudiation . . . will certainly have bearing on this case.").  Therefore, under the facts of this case, Article 19 does encompass "bumping," and the Igwe's claims fall directly within the scope of the Convention.  As such, all of their state-law claims are preempted by the Montreal Convention and subject to dismissal with prejudice.

Even if Plaintiffs are not preempted by the Montreal Convention, their claims do not prevail.  All of the Igwes' troubles were the direct result of their own tardiness.  Regardless of what time they initially arrived at the airport, the Igwes were issued a passenger verification card in lieu of a boarding pass, and this fact cannot be reasonably disputed despite Mr. Igwes's claim to the contrary.  Computers governed the issuance of the cards.  The timing was automated. KLM was merely following its standard procedures.  Moreover, the issuance of this passenger verification card did not automatically translate into the Igwes losing a coveted spot on the plane. Because they were in fact given a passenger verification card (as opposed to being denied from the outset by Ms.  Brown), the Igwes had a legitimate chance of reclaiming those seats if they had promptly presented themselves to the gate's check-in counter.  Therefore, the Igwes have failed to present any evidence that KLM or NW Airlines was negligent, breached any contract, or violated the DTPA.

---

[14]   This is especially true considering that KLM had at all times followed its standard procedures and was not obligated to offer the Igwes any compensation at all for their inability to get to the terminal in a timely fashion.  *See* DeSimone Dep.  at 115:4 - 117:22 (describing the offer to the Igwes as "customer service recovery" because the Igwes did not qualify for "denied boarding compensation," which KLM provides for passengers who follow proper procedures but are still denied a seat).

V.        Conclusion

Although Plaintiffs failure to respond does not entitle KLM to a "default" summary judgment,[15] the court finds that the Defendant has discharged its burden in showing that there are no genuine issues of material fact.  Accordingly, it is hereby

**ORDERED** that KLM's motion for summary judgment is **GRANTED**.  It is further

**ORDERED** that this case is **administratively closed** pending a lifting of the bankruptcy stay of actions against NW Airlines.

SIGNED at Houston, Texas this 4th day of January, 2007.

Melinda Haro
MELINDA   HARMON
UNITED STATES DISTRICT JUDGE

---

[15]   *Lewis*, 80 F. Supp. 2d at 694; *Taylor*, 959 F. Supp.  at 376.